IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ALAN DEXTER BREWER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 4:12-CV-00542-RDP |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

On November 19, 2009, Plaintiff Alan Dexter Brewer applied for disability insurance benefits under Title II of the Social Security Act.  Plaintiff alleges disability commencing on March 29, 2009 because of bilateral knee pain.  The Commissioner denied the claim both initially and on reconsideration.  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), and ALJ Mary E. Helmer held a hearing on January 31, 2011.  (R. 34, 171).  In a decision dated April 7, 2011, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act and, thus, was ineligible for disability insurance benefits. (R. 47).  On December 15, 2011, the Appeals Council denied Plaintiff's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration.  (R. 1-3).  Plaintiff has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons stated below, this court finds the decision of the Commissioner is due to be affirmed.

## II.     ISSUES PRESENTED

Plaintiff presents the following issues for review: (1) whether the ALJ erred by failing to state the weight given to the United States Office of Personnel Management's ("OPM") and the Veteran Affairs' determinations of disability and (2) whether the ALJ gave undue weight to the opinion of non-examining physician Dr. Stephenson.

## III.    STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo.* The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV.     LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a claimant is entitled to disability benefits when the claimant cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To make this determination, the Commissioner employs a five step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

The Social Security Regulations state that "[a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled … is based on its rules and is not our decision about whether you are disabled."  20 C.F.R. § 404.1504.  Thus, "a determination made by another agency that you are disabled or blind is not binding on [the Commissioner]."  *Id*.  However, a VA disability rating "is evidence that should be considered and is entitled to great weight."  *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981) (internal citations omitted).

An examining physician's opinion is generally entitled to more weight than the opinion of a nonexamining physician.  *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985).  The reports of a nonexamining physician are not substantial evidence on which to base an

3

administrative decision. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ may, however, rely on these reports to the extent they do not contradict information provided by an examining physician. *Edwards v. Sullivan*, 937 F.2d 580, 585 (11th Cir. 1991).

## V.  FACTS

Plaintiff has a high school education along with two years of college and was forty-seven at the time of the administrative hearing. (R. 175, 45). He has past work experience as a material handler. (R. 45). Plaintiff testified that his intensifying knee pain, bilateral carpal tunnel syndrome, asthma and back pain prevent him from working. (R. 56, 61, 65, 66).

### A.  Physical Limitations

According to a January 2008 medical report from the Birmingham Veterans Affairs Medical Center ("VAMC"),[1] Plaintiff originally hurt his left knee in February 1985 while playing basketball. He ruptured his patella tendon and had it surgically repaired. Six months later, he re-injured his left knee and doctors inserted a wire through his patella and tibial tubercle hoping that the tendon would return to its normal position. Plaintiff then had an arthroscopic debridement on his left knee in 1990 and 1998. Plaintiff stated that he was in constant pain during this time. (R. 278).

An October 2007 MRI of Plaintiff's left knee indicated another possible tear in Plaintiff's left patella. (R. 280). Additionally, x-rays of the knees demonstrated mild degenerative arthrosis of the bilateral knees. (R. 281). Further, medical records show Plaintiff had a "somewhat slow and antalgic gait." (R. 279).

On August 6, 2008, Plaintiff had a right knee diagnostic arthroscopy with chondroplasty of the patella and trochlea. (R. 505). Later, on August 21, 2008, physical therapist Rolly

---

[1] The original records of these procedures are not in the record. Plaintiff testified that these past surgeries were performed at VA hospitals overseas but that the VA had not nor could not combine the records from different locations. (R. 57-58).

Castillo issued Plaintiff a straight cane. (R. 260). In a follow-up for his right knee surgery in September 2009, Dr. James G. Davis reported that Plaintiff's range of motion was "nearly full" and prescribed him Feldene for his continued swelling. (R. 426). On January 22, 2009, Plaintiff reported drowsiness and an upset stomach caused by his medication, which included hydrocodone and etodolac. (R. 402).

On October 6, 2009, Plaintiff underwent another left knee arthroscopic debridement. Attending surgeon Dr. James Grady Davis stated that Plaintiff could bear weight and use a full range of motion "as tolerated immediately." (R. 491-92). On December 21, 2009, Dr. Ashley Estes noted that Plaintiff was taking Lortab for his knee pain and doing weekly physical therapy. She continued his physical therapy and additionally prescribed him Ultram for his pain and inflammation. (R. 629).

In February 2010, Plaintiff saw Dr. Graham Colvert, an orthopedic surgery resident, after falling and hitting his knee a week prior. Dr. Colvert opined that Plaintiff's x-rays were unchanged since August 2009. Further, Plaintiff told Dr. Colvert that he was "very active around his house" and that he "does everything he wishes to do." Dr. Colvert scheduled a repeat evaluation in six months. (R. 620).

In addition to his knee problems, Plaintiff suffers from back pain, hand pain and asthma. A February 2008 x-ray of the lumbar spine indicated "spondylolisthesis of the L5 secondary to pars defect." (R. 213). An MRI dated April 27, 2009 demonstrated mild degenerative changes of the cervical spine at C4-5. (R. 209). Regarding his hands, a January 2011 electromyography report indicated that Plaintiff suffered from moderate bilateral carpal tunnel syndrome. (R. 634). On June 30, 2010, a spirometry demonstrated a "moderate airway obstruction." (R. 603).

On December 8, 2009 Dr. Stuart X. Stephenson performed a Physical Residual Functional Capacity Assessment. Dr. Stephenson determined Plaintiff could occasionally lift twenty pounds; frequently lift ten pound; stand or walk for a total of six hours in a work day; sit for a total of six hours in a work day; never use ladders, ropes or scaffolds; and occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. (R. 535).

B.  Mental Limitations

Plaintiff also received treatment for anxiety and depression at the Birmingham VAMC. In July 2008, nurse practitioner Barbara Turner discontinued Plaintiff's hydroxyzine and prescribed him trazodone. (R. 461). On September 10, 2009, Mrs. Turner noted that he was taking Buspar and Effexor along with trazodone. She noted that Plaintiff tolerated the medication "well[,] with benefit and without adverse effects." (R. 341). In March 2010, Plaintiff reported much improved energy after taking testosterone shots and described working on the garden and with his animals as good therapy. (R. 613). In April 2010, Dr. Zahid Husain discontinued the trazodone because it was making Plaintiff hungry and prescribed him zolpidem to help him sleep. (R. 611). Plaintiff stated that he slept "like a baby" after Dr. Husain's medication adjustments and opined that he could have a "normal life once [he had his] finances in order." (R. 668).

C.  The ALJ Hearing

After the Commissioner denied Plaintiff's request for disability insurance benefits, Plaintiff requested and received a hearing before an ALJ. (R. 53). At the hearing, Plaintiff testified that his biggest problem was his knee pain. (R. 56). He testified that he needed his cane to walk, had to wear knee braces daily and would often have his knees "give[] out" on him.

He further stated that his knee pain was constant and described it as an eight on a zero-to-ten pain scale. (R. 58-59).

Next, Plaintiff testified as to the side effects of his pain medication, particularly Lortab and hydrocodone. (R. 60). He stated that the medication made him "[k]ind of dysfunctional" and "always tired or sleepy." (R. 61).

Plaintiff also testified that had to wear braces on his hands because of his carpal tunnel syndrome. He stated that had one to wear during the day and two others to wear at night. (R. 63). Furthermore, he testified that he would get bad headaches two to three times a week because of his high blood pressure. (R. 65). Regarding his asthma, Plaintiff stated that his last asthma attack had been about a week and a half prior to the hearing and that he would suffer such an attack every other week. He also alleged that his back would go out about once a month and cause him pain of an eight or a nine. This would cause him to be "bedridden" for a couple of days. (R. 66-67).

Next, Plaintiff testified about his functional limitations. He stated that he could walk about fifty yards, stand for only a couple of hours, sit for only forty-five minutes and lift thirty pounds. These limitations would not allow him to continue take care of his animals or his garden. (R. 67-68). He further testified that he did not do any cooking or cleaning and would only get out of the house about once a week. (R. 70). Plaintiff also attended church twice a month. (R. 72).

The ALJ then examined vocational expert Michael McClanahan about Plaintiff's ability to work. The ALJ hypothesized about an individual who could perform light work; needed a sit/stand option; could not operate foot controls, climb ladders, kneel, crouch, or crawl; should avoid pulmonary irritants; was limited to frequent gross and fine manipulation; would have no

direct contact with the public; and should not work at unprotected heights or with hazardous machinery. Dr. McClanahan opined that such an individual could not return to Plaintiff's past work but that the individual would be able to perform jobs in the national economy. He stated that the individual could work as a electronics worker, winding machine operator and inserting machine operator. (R. 78-80).

      **D.**    **The ALJ's Decision**

On April 7, 2011, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act. (R. 47). First, the ALJ found that Plaintiff met the insured status requirements of the Act. Next, she determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. She found that Plaintiff's bilateral knee conditions, chronic obstructive pulmonary disease, degenerative spinal changes, bilateral carpal tunnel syndrome, depression and anxiety qualified as severe impairments; however, she determined that these impairments, singly or in combination, did not manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 36).

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the additional limitations that he have a sit/stand option, never climb, kneel, crouch or operate foot controls. Additionally, the ALJ found he could frequently use his hands for gross and fine manipulation but limited him to no direct contact with the public and to occasional interaction with co-workers. (R. 38). In making this determination, the ALJ found that although Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms, Plaintiff's testimony regarding the severity and limiting effects was not credible to the extent it differed from this RFC finding. (R. 40). The ALJ supported this determination through a summary of Plaintiff's treatment at the Birmingham VAMC. (R. 40-

8

43).  Additionally, the ALJ gave substantial weight to Dr. Stephenson's assessment but noted that Plaintiff was more limited than Dr. Stephenson had indicated.  (R. 43).

Basing on her RFC finding and testimony of the vocational expert, the ALJ determined that Plaintiff could not perform his past relevant work as a mail handler.  (R. 45).  However, she concluded that Plaintiff could perform jobs that existed in significant number in the national economy and, therefore, is not disabled under the Social Security Act.  (R. 46-47).

## VI.     DISCUSSION

After careful review, the court concludes that the ALJ's fact finding is supported by substantial evidence and that correct legal standards were applied. The court addresses Plaintiff's arguments below.

### A.     Office of Personnel Management and VA Determinations

Plaintiff contends that the ALJ erred by not stating the weight given to the agency determinations that Plaintiff is disabled.  This argument is unpersuasive.

The decisions of "any other governmental agency about whether you are disabled … is based on its rules and is not our decision about whether you are disabled or blind. 20 C.F.R. § 404.1504.  However, when the Social Security Administration's and the agency's disability "definitions actually are construed in a like manner," the ALJ should accord the agency's finding great weight.  *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984).

#### 1.     Office of Personnel Management

The ALJ did not err by failing to mention the OPM disability letter.  At the outset, the court notes that "the Social Security Act disability definition is 'more stringent' than that of [Federal Employee Retirement System]."  *Trevan v. Office of Pers. Mgmt.*, 69 F.3d 520, 524 (Fed. Cir. 1995).  However, some courts have found that a failure to consider an OPM decision

is reversible error. *See Bridges v. Astrue*, 5:09-CV-498-OC-JBT, 2011 WL 549715 (M.D. Fla. Feb. 8, 2011).

> The FERS disability statute states:
>
> Any employee shall be considered to be disabled only if the employee is found by the Office of Personnel Management to be *unable, because of disease or injury, to render useful and efficient service in the employee's position and is not qualified for reassignment*, under procedures prescribed by the Office, to a vacant position which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service.

5 U.S.C. § 8337(a) (emphasis added). The OPM will find a claimant disabled if he (1) cannot return to his previous work and (2) cannot be reassigned. Neither of these determinations conflict with the rationale underlying the ALJ's opinion.

First, the OPM finding that Plaintiff cannot return to work as a mail carrier mirrors the ALJ's finding that Plaintiff cannot return to work in that position. (R. 202, 45). In *Bridges*, the court found the "lack of consideration [of the OPM decision]… particularly troubling because the ALJ proceeded to find that [Plaintiff] could return to her past work." 2011 WL 549715 at *7. The ALJ did not err by failing to exhaustively discuss all the evidence that supported her step four finding.[2]

Second, the record does not demonstrate why OPM found that Plaintiff could not be reassigned. The OPM letter merely states that "we have determined that you are permanently disabled." (R. 202). Nothing in the record indicates what jobs, if any, are "in the agency at the same grade or level" as Plaintiff's previous work. 5 U.S.C. § 8337(a). Even if such jobs exist, the record does not demonstrate what level of exertion they required or why Plaintiff could not

---

[2] A later case in the Middle District of Florida found that failing to discuss the OPM determination was error even though the ALJ found Plaintiff could not return to her past work. *See Hatchett v. Comm'r of Soc. Sec.*, 6:11-CV-1810-ORL-18, 2013 WL 980574 (M.D. Fla. Feb. 26, 2013) *report and recommendation adopted*, 6:11-CV-1810-ORL-18, 2013 WL 980287 (M.D. Fla. Mar. 13, 2013). The court reasoned that "[i]f the ALJ had properly analyzed OPM's disability determination it may well have altered the RFC analysis and thus, the ALJ's finding at step five." *Id*. at *6. Respectfully, this court disagrees. As discussed subsequent, the OPM letter does not conflict with the ALJ's RFC or step five findings.

perform them. Furthermore, the statute states that postal workers, specifically, are "not qualified for a reassignment described [above] if the reassignment is to a position in a different craft or is inconsistent with the terms of a collective bargaining agreement covering the employee." 5 U.S.C. § 8337(a). The OPM, therefore, may have determined that Plaintiff could not be reassigned because of his collective bargaining agreement. Rather than guess at the basis for the OPM determination, the ALJ considered the evidence, including Plaintiff's medical records and the vocational expert's testimony to conclude that Plaintiff could perform other work in the national economy. The ALJ should not be required to assign great weight to conjecture about the basis of the OPM disability finding in making this determination.

To the extent that the OPM disability decision is evaluated "in a like manner" to SSA disability, the OPM decision supports the Commissioner's findings. *Falcon*, 732 F.2d at 831. To the extent it is evaluated in a distinct and unclear manner, the OPM decision did not provide any evidence conflicting with the Commissioner's findings. For the foregoing reasons, the ALJ did not err by failing to discuss the OPM determination.

    2.   <u>Veteran Affairs</u>

Unlike OPM determinations, it is established that "A VA rating … should be considered and is entitled to great weight." *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981).[3] In Rodriguez, the court found that the "VA rating of 100% disability should have been more closely scrutinized by the ALJ." *Id*. Thus, the ALJ is required to consider a VA disability determination and give it great weight.[4]

---

[3] Decisions of the former Fifth Circuit issued before September 30, 1981 are binding precedent. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).
[4] In an unpublished decision, the Eleventh Circuit determined that this consideration could be "implicit" where the ALJ discussed the VA's evaluations and referenced that actual disability ratings. *Kemp v. Astrue*, 308 Fed. App'x 423, 426 (11th Cir. 2009). Although the ALJ never discusses the disability percentages, she discussed and referenced Plaintiff's treatment at the Birmingham VAMC, which would have formed the basis for the VA disability rating.

Contrary to Plaintiff's assertions, the record indicates that the VA did not actually find Plaintiff disabled. Under the VA ratings system, an individual may be receive a total disability rating "where the schedular rating is less than total." 38 C.F.R. § 4.16(a). However, "if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more." *Id*.

The VA records indicate that Plaintiff had a twenty percent rating for his "lower leg condition," a thirty percent rating for his asthma and a ten percent rating for his "traumatic arthritis." (R. 650). These ratings combined provided a fifty percent total service connected disability rating. *Id*. Plaintiff meets neither the single disability requirement of forty percent nor the total disability requirement of seventy percent. *See* 38 C.F.R. § 4.16(a). Thus, according to the VA ratings system, Plaintiff's impairments were not "sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. § 4.15. Likewise, the ALJ found that Plaintiff could perform other work in the national economy. (R. 46). Thus, any errors in the consideration of the VA ratings were harmless and are not a ground for reversal. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

B.   **Nonexamining Physician Dr. Stephenson's Opinion**

Plaintiff contends that the ALJ improperly relied on Dr. Stephenson's opinion "over the opinions of two federal agencies that actually based their opinions on examining physicians." (Pl.'s Brief 8). The court disagrees.

A nonexamining physician's opinion is entitled to less weight than an examining physician's opinion. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1984). Further, "[t]he

opinions of nonexamining, reviewing physicians, … when contrary to those of examining physicians are entitled to little weight in a disability case." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (internal citations omitted).  A nonexamining physician's assessment, "taken alone, do[es] not constitute substantial evidence on which to base an administrative decision." *Spencer on Behalf of Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (internal citations omitted).  However, the ALJ may rely on a nonexamining physician's assessment "to the extent it contains non-contradictory information." *Kemp v. Astrue*, 308 Fed. App'x 423, 427 (11th Cir. 2009) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584–85 (11th Cir. 1991)).

Plaintiff is correct that the ALJ gave "substantial weight" to Dr. Stephenson.  (R. 43). But as discussed above, the OPM letter and the VA disability rating do not conflict with his assessment.  Furthermore, the ALJ extensively discussed and relied on the VA records and the examining physician's notes.  (R. 40-43).  Plaintiff does not cite – and the court has not found – any medical records from his treatment that conflict with Dr. Stephenson's determinations.  The ALJ also provided greater limitations than those assessed by Dr. Stephenson, including a sit/stand option and higher restrictions on climbing, kneeling, crouching crawling.  (R. 38). Additionally, Plaintiff testified that he could lift thirty pounds while Dr. Stephenson found he could only occasionally lift twenty.  (R. 68, 534).  Because the ALJ's findings, Plaintiff's treatment records and Dr. Stephenson's report are all consistent, the ALJ did not err by giving substantial weight to Dr. Stephenson's assessment.  *See Kemp*, 308 Fed. App'x at 427.

## VII. CONCLUSION

For the reasons stated above, this court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be **AFFIRMED**.  The court will enter a separate order to that effect simultaneously.

**DONE** and **ORDERED** this    10th      day of December, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

14